IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MARK McALISTER and DEBRA McALISTER, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 111277D |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Defendant's determination that they are full year residents for tax year 2009 and Defendant's disallowance of Plaintiffs' claimed ordinary and necessary business expenses for their Oregon mini-storage business. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on April 10, 2012. Plaintiff (Mark McAlister) appeared on behalf of Plaintiffs. Jamie Tenace (Tenace), Tax Auditor, appeared on behalf of Defendant.

Plaintiffs' Exhibits 1 through 11 and Defendant's Exhibits A, C, G, H-8 and H-12 were admitted without objection

## I. STATEMENT OF FACTS

Plaintiff testified that all the cleaning and maintenance expenses in the amount of $22,195 claimed in 2009 for the mini-storage business owned by him were ordinary and necessary expenses. Plaintiff testified that he categorized and submitted receipts for expenses as follows:

"Exhibit 1: Expenses ($3,686.08) for ongoing maintenance of mini-storage for the facility that was built in 1984.

"Exhibit 2: Expenses ($1,225.77) to repair the 'building when a car rolled through the exterior wall of one of the units.'

"Exhibit 3:  Expenses ($999.00) to install security system.

"Exhibit 4:  Expenses ($4,854.43) to install 'heating system upgrade/replacement.'

"Exhibit 5:  Expenses ($1,354.00) for 'day labor for cleanup, gutter clean out, maintenance, painting, etc…. on the mini storage complex.'

"Exhibit 6:  Expenses ($1,169.31) to 'repair/replace doors, frames, trim, etc… [i]n various parts of the mini storage complex.'

"Exhibit 7:  Expenses ($9,060.73) to excavate, install a series of drains, back fill with gravel and install concrete retaining wall and security fence.

"Exhibit 8:  Expenses ($1,598.01) to remodel the bathroom to meet ADA regulations."

(*See* Ptfs' Ltr at 1-2, Apr 3, 2012.)  In response to Tenace's questions, Plaintiff testified that his father, who suffered from the disabling effects of a stroke, was the "live-in manager" for a portion of calendar year 2009 (from July to December).  Plaintiff testified that when he contacted the city about permits to complete the retaining wall, he was advised that a permit would not be issued unless the bathroom, which is accessible to the public, was "ADA compliant."  He testified that the decision to remodel the bathroom was "two fold:"  first, to comply with the city's regulation, that to obtain a building permit, the bathroom had to be "ADA compliant" and second, to replace the "dry rot" in the floor and the "leaky commode."

Plaintiff testified that the "IRS" audited his 2009 federal income tax return.  He testified that "no changes" were made by the "IRS."

Plaintiff testified that in 2009 he was a part-year Oregon resident.  Plaintiff read from Exhibit 11, testifying that he and his family "lived full-time in Alaska from 1989 until July 2009" and "[b]efore July 2009, plaintiffs had no permanent place of abode in Oregon, and did have a permanent place of abode elsewhere."  (*See* Ptfs' Ex 11 at 1.)  He testified that his employment contract with Annette Islands School District ended "on or about the last day of

June 2009." (*Id*.) Under the terms of that contract, Plaintiff agreed "to live on school property and pay rent in the amount of $500 per month." (Ptfs' Ex 10 at 1.) Tenace questioned Plaintiff about the "Withholding and Income Verification Request" completed by Charlene Jimenez on behalf of the Charline/Annette Islands School District. (Def's Ex C-14.) On the line item entitled "Any additional information available[,]" the following appeared: "Contracted was paid out in full, however, employee was on administrative leave for end of contract." (*Id*.) Plaintiff testified that he was on "leave" for "45 days," from November 2008 until January 2009. Tenace submitted Alaska Airlines Visa Signature statement for December 2008 showing numerous purchases in Oregon during that month and a receipt from the Josephine County Sheriff's Office in the amount of $10 for "prints." (Def's Ex C-2 – C-4, C-18.) Plaintiff testified that in January 2009, he was "called back to work" and he was assigned and "fulfilled other duties" in the "district office" until the contract ended in June 2009 because "the district concluded that it was in the best interest" for Plaintiff "not to be in the school." Plaintiff testified that the "lawsuit settled in August 2009," after his contract ended.

Plaintiff testified that he "knew he would be eligible to retire in July 2009," and his employment beyond June 2009 "was uncertain because everyone was cutting" so he "moved a bunch of his belongings" to a vacant unit in his mini-storage business in December 2008. Plaintiff testified that between January 2009 and July 2009, he "jump seated" to Medford "on a couple different weekends." Plaintiff testified that his wife was not employed in Alaska in 2009, stating she began working in Oregon in "fall 2009." Plaintiff stated that in 2009, his wife "was drawing unemployment * * * as an Alaskan Resident." (Ptfs' Ex 11; Def's Ex H-8.) Tenace submitted copies of monthly calendars for 2009, showing dates of purchases by Plaintiffs to support her determination that Plaintiff was in Oregon for 246 days. (Def's Ex C-27 – C-143.)

Plaintiff submitted copies of Oregon driver licenses issued in July 21, 2009, to him and June 23, 2010, to Debra Ann McAlister. (Ptfs' Ex 10-5.) Tenace submitted a document, showing that Plaintiff's Oregon driver license was issued on May 26, 2009, and Plaintiff received his "CDL upgrade" on July 21, 2009. (Def's Ex C-144.)

Tenace testified that in determining Plaintiffs were full-year Oregon residents she "considered 40 possible factors," listing:

> "Oregon bank accounts at Sterling Bank and Rogue Federal Credit Union. (*See* Def's Ex G.)
>
> "Oregon (Cave Junction) address appearing on Plaintiffs' federal income tax returns, W-2 wage statements and credit card statements.
>
> "Plaintiff's affiliation with Southern Oregon Special Education Services.
>
> "Plaintiffs' ownership of four properties in Oregon.
>
> "Plaintiff's ownership in two or more Oregon businesses.
>
> "Plaintiff's presence in Oregon more than 200 days in 2009.
>
> "Plaintiffs' intent to move to Oregon and the 'move' of their personal belongings to Oregon in 2008.
>
> "Plaintiffs' relatives, including father, mother and sister, who all live in Oregon, and Plaintiff's daughter was enrolled in Southern Oregon University in 2009.
>
> "Plaintiffs' use of the professional services of H & R Block located in Oregon.
>
> "Plaintiff's 'roots,' stating that Plaintiff was 'born and attended school' in Oregon.
>
> "Plaintiff's social security number, indicating that he was 'born here.' "

Plaintiff responded, testifying that Plaintiffs' "held bank accounts in Alaska at Alaska USA credit union, Bank of Alaska, and Wells Fargo." (*See* Ptfs' Ex 11.) Plaintiff testified that he bought Oregon property in 2009 as "investment property," and he "split" the property, selling one portion in 2009, and "kept the north end to build his home." Plaintiff testified that "Plaintiffs own a rental house in Anchorage, AK and also a house in Kake, AK." (*Id.*)

## II. ANALYSIS

Plaintiffs appeal Defendant's denial of a claimed business expense deduction and determination that Plaintiffs are full-year Oregon residents for tax year 2009.

A.      *Ordinary and necessary business expense*

"The Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law.  ORS 316.007." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005).  As a result, the legislature adopted, by reference, the federal deductions, including those allowed under section 162 of the Internal Revenue Code.[1]

IRC section 162(a) provides in relevant part that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."  For a deduction to be allowed as a business expenses, it must be both "ordinary" and "necessary" to a taxpayer's trade or business.  *Id*.  "To be 'necessary[,]' an expense must be appropriate and helpful to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved."  *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (Feb 19, 2002) (citations omitted).  The Oregon Tax Court has stated that "an ordinary expense is one which is customary or usual.  This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community."  *Roelli v. Dept. of Rev*. (*Roelli*), 10 OTR 256, 258 (1986) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct

/ / /

---

[1] All references to the IRC and accompanying regulations are to the 1986 code and include updates applicable to 2009.

8, 78 L Ed 212 (1933)); *Guinn v. Dept of Rev.*, TC-MD 040472D, WL 1089727 at \*4 (Apr 19, 2005) (citing *Roelli*, 10 OTR at 258).

It is a well settled principle that "[d]eductions are strictly a matter of legislative grace, and a taxpayer must meet the specific statutory requirements for any deduction claimed." *Gapikia v. C.I.R.*, 81 TCM (CCH) 1488, WL 332038 at \*2 (2001) (citations omitted). "Taxpayers are required to maintain records sufficient to substantiate their claimed deductions." *Id*.

Plaintiffs submitted receipts for each of the claimed cleaning and maintenance expenses. Plaintiff testified as to the business purpose for each of the claimed expenses. Defendant presented no evidence showing that any of the claimed expenses were not ordinary and necessary business expenses. The total of the amount of receipts submitted as evidence exceed the amount of Defendant's audit adjustment and the amount Plaintiffs seek as an allowable deduction. The court concludes that Plaintiffs substantiated their deduction and allows the amount Plaintiffs claimed for the 2009 cleaning and maintenance expense deduction in the amount of $22,195.

B.      *Domicile*

Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source income. ORS 316.037(1), (3).[2]   Oregon defines a "resident" as "[a]n individual who is domiciled in this state \* \* \*." ORS 316.027(1)(a)(A). Thus, residency is statutorily equated with domicile. Domicile is a common-law concept composed of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.* (*dela Rosa*), 313 Or 284, 289, 832 P2d 1228 (1992) (internal quotation marks and citation omitted). OAR 150-

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence." While an individual can have more than one residence, he "can have but one domicile." *dela Rosa*, 313 Or at 289 (internal quotation marks and citation omitted).

ORS 316.027(1) excludes an individual from being a resident, even though domiciled in Oregon, if the person: (1) spends less than 30 days in Oregon during the year, (2) does not maintain a permanent place of abode in Oregon, and (3) does maintain a permanent place of abode elsewhere. Conversely, the statute will treat an individual who is not domiciled in Oregon as a resident if the individual: (1) maintains a permanent place of abode in Oregon, and (2) spends more than 200 days per year in Oregon, "unless the individual proves that the individual is in the state on for a temporary or transitory purpose." ORS 316.027(1)(a)(B); *Dept of Rev. v. Glass*, 15 Or Tax 117, 119 (2000).

The parties agree that Plaintiffs were residents of Oregon. Plaintiffs allege that they were part-year residents, having been Alaskan residents from 1998 until Plaintiffs' contract terminated in June 2009. ORS 316.022(5) defines a " 'Part-year resident' [to be] an individual taxpayer who changes status during a tax year from resident to nonresident or from nonresident to resident." Plaintiffs allege that they became Oregon residents in July 2009.

Defendant alleges that Plaintiffs were full year residents, citing ORS 316.027(1)(B). ORS 316.027(1)(a)(B) states in pertinent part that "resident" or "resident of this state" means:

> "An individual who is not domiciled in this state but maintains a permanent place
> of abode in this state and spends in the aggregate more than 200 days of the
> taxable year in this state unless the individual proves that the individual is in the
> state only for a temporary or transitory purpose."

Defendant asks the court to conclude that Plaintiffs had a permanent place of abode in Oregon prior to the completion of Plaintiffs' home in early July 2009. Defendant offered evidence that

Plaintiffs own four properties in Oregon. Plaintiff did not dispute Plaintiffs' real property ownership but testified that none of the properties was a permanent place of abode prior to July 2009. Plaintiff testified that one of the properties was "bare land" and the other was "investment property." The parties agree that Plaintiffs have an ownership interest in the living quarters available for the mini storage on-site manager. Plaintiff testified that during the first six months of 2009, Plaintiff's father was not occupying the living quarters. Plaintiff testified that Plaintiffs moved "some of their belongings to their mini-storage complex for safe keeping in December 2008. No testimony was given or evidence submitted stating or showing where Plaintiff or his family stayed when they were in Oregon prior to moving into their home in July 2009.

In determining when Plaintiffs changed their status from nonresident to resident, the court relies on Defendant's evidence, showing Plaintiffs' purchases during 2009. Defendant submitted credit card receipts signed by Plaintiff and his wife and various supply orders placed by Plaintiff. (Def's Ex C.) Plaintiffs' purchases, substantiated by signed credit card receipts and supply orders, occurred with almost daily frequency beginning in late April 2009 and continuing through June 2009. (Def's Ex C-43 – C-123.) The court finds it difficult to conclude that Plaintiff was an Alaskan resident who was working full time in Alaska when the purchases were regularly made during the work week rather than infrequently on a weekend. (*See* Def's Ex C-61 – C-123.) Even though it is unclear to court where Plaintiffs lived, the frequency of the purchases evidence Plaintiff's day-to-day presence in Oregon and there is ample evidence for the court to conclude that Plaintiff changed his status and that of his family from nonresident to Oregon resident no later than May 2009.

/ / /

/ / /

### III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiffs' claimed cleaning and repair expense deduction for the mini-storage business is allowed. The court concludes that Plaintiffs changed their status from nonresident to Oregon resident as of May 1, 2009, and as a result, Plaintiffs meet the statutory requirements of ORS 316.027(1)(a), making them Oregon residents for tax year 2009. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are allowed a cleaning and repair business expense deduction in the amount of $22,195.

IT IS FURTHER DECIDED that Plaintiffs' were Oregon residents for tax year 2009.

Dated this ____ day of June 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on June 18, 2012. The Court filed and entered this document on June 18, 2012.*